**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| SEARRA PRIOLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:25-cv-04013-MDH |
| | ) | |
| EQUIPMENTSHARE.COM INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant EquipmentShare.com Inc.'s ("EquipmentShare") Motion for Summary Judgment. (Doc. 26). The Defendant filed Suggestions in Support (Doc. 26), Plaintiff filed Suggestions in Opposition (Doc. 33-1) and the Defendant filed a reply. (Doc. 32).[1] The motion is now ripe for adjudication on the merits. For the reasons stated herein, the Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

This case arises from an alleged violation of the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act ("ADEA") and the Missouri Human Rights Act ("MHRA"). Plaintiff was employed by Defendant as a remote worker and performed work for

---

[1] The Defendant filed a motion to strike Plaintiff's Suggestions in Opposition. (Doc. 31). The Court denied the motion, ruled that Plaintiff's Revised Suggestions in Opposition be filed, and the prior Suggestions in Opposition (Doc. 29) be withdrawn. (Doc. 35). The Court also allowed the Defendant an opportunity to file its response to Plaintiff's Statement of Additional Uncontroverted Material Facts and to lodge any objections to said statements. *Id*. The Defendant did so, and the Court will include in its analysis Defendant's Responses and Objections to Plaintiff's Statement of Additional Uncontroverted Material Facts. (Doc. 36).

1

Defendant in Monmouth County, New Jersey. The Defendant is a for profit corporation with its principal office address in Columbia, Missouri.

On or about July 31, 2023, Plaintiff was hired by Defendant as a senior recruiter. Plaintiff alleges that at all relevant times, she met or exceeded all of Defendant's legitimate performance expectations. On or about November 2023, Plaintiff alleges she engaged in a protected activity when she raised complaints to Defendant that its general manager hiring practices were discriminatory. Plaintiff complained that the Dominance, Influence, Steadiness, and Conscientious ("DISC") assessment used in the hiring process pressured individuals to disclose disabilities and/or resulted in lower scores for individuals with disabilities or older individuals, thereby making them less hirable. Plaintiff states that she made continuous attempts to bring attention to these discriminatory hiring practices in weekly meetings with Defendant. Plaintiff further alleges that around this time, she had been instructed not to hire a particular candidate because he was deemed "too old" by Defendant.

On or about January 18, 2024, Plaintiff's supervisor allegedly told her to falsify a DISC score for a lateral general manager candidate. On or about January 25, 2024, Plaintiff, now reporting to her previous skip-level manager, again explicitly reported her concerns regarding Defendant's hiring practices, alleging that individuals were being scored lower due to both age and disabilities. Plaintiff alleges that despite this, Defendant's manager condoned and enforced the rejection of said candidate. Plaintiff alleged that a week before her eventual termination, she suggested to her manager that Defendant should disclose its assessment practices in job postings to maintain compliance with hiring transparency. On or about February 16, 2024, the Defendant terminated her employment for alleged insubordination. However, Plaintiff alleges that Defendant

2

was not able to explain how she had been insubordinate and instead claims that Defendant's stated reason was a pretext for discrimination.

Plaintiff's First Amended Complaint ("Complaint") alleges four counts: Count I - ADA Retaliation; Count II - ADEA Retaliation; Count III - MHRA - Retaliation (Age); and Count IV - MHRA - Retaliation (Disability). Defendant brings its current motion arguing that it is entitled to summary judgment because: Plaintiff cannot establish a *prima facie* case of retaliation under state or federal law; Defendant's legitimate, non-discriminatory reason for its decision to terminate Plaintiff demonstrate no retaliation occurred; and there is no evidence to establish or suggest that Defendant's stated reason for Plaintiff's termination was pretextual.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

3

**DISCUSSION**

## I.     Retaliation under State or Federal Law

Without direct evidence of a retaliatory motive, the courts analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042–43 (8th Cir. 2007).[2] Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *McDonnell Douglas Corp.,* 459 F.3d at 914. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a "non retaliatory reason for the adverse employment action." *Id*. (quotation marks omitted). If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who "is 'then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.' " *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir.2005) (quoting *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833 (8th Cir.2002)).

---

[2] The requirements for a prima facie case of retaliation under the MHRA are substantively the same. *See Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) ("A retaliation claim under the MHRA requires [the employee] to show that (1) he complained of an MHRA-prohibited activity, (2) [the employer] took an adverse employment action, and (3) a causal connection exists between the complaint and adverse action.").

4

Defendant argues that Plaintiffs' claims fail under the *McDonnell Douglas's* burden-shifting test as there is no direct evidence in the record of retaliation nor is there evidence of a causal connection between Plaintiff's alleged protected conduct and her termination.

### A.    Evidence of Protected Conduct

"Protected activity is 'an informal or formal complaint about, or other opposition to, an employer's practice or act ... if the employee reasonably believes such an act to be in violation of the statute in question.'" *Jeseritz v. Potter,* 282 F.3d 542, 548 (8th Cir.2002) (quoting *Sherman v. Runyon,* 235 F.3d 406, 409 (8th Cir.2000)). "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 1000 (E.D. Mo. 2009) (quoting *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)).

Defendant first argues that there is no evidence from which a fact-finder could conclude that Plaintiff reasonably believed the conduct she opposed was unlawful under any of the statutes at issue. Defendant asserts that Plaintiff's disagreement with Defendant's use of the DISC assessment were based on a generalized sense of what she viewed as unfairness, and her disagreement with using the DISC assessment from a recruiting perspective. Defendant states that Plaintiff cannot articulate any good faith basis for her belief that the DISC assessment creates the "possibility" for discrimination. Defendant argues that Plaintiff's testimony reflects her opinion that Defendant's use of the DISC assessment is "problematic" and "unethical," but not illegal within the meaning of that term under the ADA, ADEA, or MHRA. Further, Defendant states Plaintiff's claims that she spoke out against using the DISC assessment from the moment she began

working at EquipmentShare until the moment she was fired is not the type of conduct the ADA, ADEA, and MHRA are intended to shield.

Plaintiff argues she engaged in a statutorily protected activity on multiple occasions. Plaintiff contends in weekly staff meetings would point out that the DISC assessment would result in lower scores for individuals with disabilities, making them less desirable to hire. Between January 24, 2024, to January 25, 2024, she also reported the Defendant's alleged discriminatory hiring practices to Colby Williamson, Plaintiff's supervisor, and discussed that individuals are being scored lower on the DISC assessment due to both age and disability.

### i.    Protected Activity - Age Discrimination

Viewing the evidence in the light most favorable to the non-moving party, there is a genuine issues of material fact as to whether Plaintiff engaged in a statutory protective activity. In the deposition of Plaintiff, the following interaction took place:

> Q.    Are you aware of any candidate that wasn't hired because of their DISC assessment score?
>
> A.    Yes.
>
> Q.    Who was not hired?
>
> A.    There was a candidate that -- I don't remember his exact name. I did have it one time before. It was in the Pacific Northwest region, maybe even Northern California. Chad Guillaumin was the main hiring manager that I was working with. And it was a candidate that was being hired -- that was being considered for his general manager role. He did not get hired because of his age.
>
> Q.    How do you know he was not hired because of his age?
>
> A.    Well, when I spoke to Chad after he interviewed the candidate, he said that this person was too old. He did not want to hire him.

(Doc. 29-2, page 81, Lines 1-18). Plaintiff was asked whether she reported this interaction to anyone which prompted the following interaction:

Q. So did you report Chad allegedly telling you not to hire a candidate because he was too old? Did you report that to anyone?

A. Yeah. I told Colby Williamson.

Q. Did you tell HR?

A. Well, Cody Brown was in the meeting. He was a part of that meeting, so he was there to witness it.

(Doc. 29-2, page 125 line 19 - page 126 line 1). Further in the deposition transcript, Plaintiff was asked further about this interaction:

Q. And did you inform the candidate that he wasn't being hired?

A. For false reasons, yes.

Q. What reasoning did you give?

A. That he just didn't have the ability -- he didn't have the abilities required for the role.

Q. Why would you lie?

A. Because that's what I was instructed to do.

Q. Well, but you didn't have to do so? You could have said, "No. I'm not doing this." Why did you lie to a candidate if you knew that that was not the real reason?

A. I lied because Colby Williamson told me directly to lie, and when you are under the pressure of intimidation and when you are scared of someone, you typically just do what you're told.

Q. But you were scared of Colby?

A. 100 percent.

(Doc. 29-2, page 126 line 22 - page 127 line 15). While the name and the age of the applicant is unknown, this evidence is enough to show that there is a genuine issue of material fact as to whether Plaintiff engaged in a statutorily protected activity. Plaintiff was present and discussed with Mr. Guillaumin the candidate's qualifications and was informed he was too old and that Mr. Guillaumin would not proceed with hiring the individual. Plaintiff then reported this conversation to Mr. Williamson with Human Resources ("H.R.") present. Mr. Williamson then instructed

7

Plaintiff to lie to the applicant. Based upon the record, the Court finds that, in viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether she participated in a protected activity for purposes of the ADEA and MHRA.

### ii.      Protected Activity - Disability Discrimination

Viewing the evidence in light most favorable to Plaintiff, the Court finds that Plaintiff did not engage in a protected activity regarding her claims of disability discrimination. The Defendant in its Statement of Uncontroverted Material Facts ("SUMF") makes the following statements, which Plaintiff did not oppose:

> Plaintiff testified that she believes the way EquipmentShare hired general managers was "problematic and discriminatory" in that the DISC assessment "pressures" candidates to disclose a mental health disability or physician disability. (Ex. 1, Plaintiff's Dep. 66:7-20).[3] Plaintiff has no medical background or medical training. No candidate ever informed Plaintiff that they felt pressured by the DISC assessment to disclose a mental health disability or physical disability. (Ex. 1, Plaintiff's Dep. 68: 12-15). Plaintiff does not recall an instance when EquipmentShare did not hire a candidate because of his or her disability.[4] Plaintiff has never spoken to any type of expert in mental health about whether he or she believes that the DISC assessment requires candidates to disclose a mental health disability and/or a physical disability. (Ex. 1, Plaintiff's Dep. 66:1-6).

(Doc. 27, SUMF 12, 14-17). Plaintiff has provided no evidence to indicate that the DISC assessment is truly discriminatory to those with physical or mental disabilities. Throughout her deposition testimony, Plaintiff does not state any basis for why the DISC assessment may be discriminatory except vague ideas that an applicant may feel pressured to disclose a mental or physical disability or may score lower based upon certain answers. This is evident from the following portion of Plaintiff's deposition transcript:

---

[3] Plaintiff clarified that she believes that the way Defendant hired general managers was "problematic and discriminatory" due to disabled job applicants potentially receiving lower scores on some of the DISC categories, which meant they would be a less desirable hire for Defendant. (Doc. 33-1, page 8).

[4] Plaintiff clarified that although she did not personally recall an instance when Defendant did not hire a candidate because of his or her disability, she believes it is possible that a candidate was not hired at Defendant because of a disability. (Doc. 33-1, page 9).

Q. How did the DISC pressure candidates to disclose disabilities?

A. I think that if you're taking a personality assessment and you are faced with questions that you have mental health conditions or other clinical disabilities, you might feel pressured to provide justification or feel like well, this is my answer, but it's because of X, Y, Z. And so that's how I feel like it can, you know force people to reveal that.

Q. So at any point on the DISC assessment, is there a question about mental health conditions or physical conditions?

A. I don't recall the exact questions. There are questions that -- you know, along the lines of mood swings, or mood stability or the inability to be social, interact, make new friends. Those things can -- mental health conditions can impact those things.

…

Q. Is it your testimony that the questions asked on the DISC assessment would require an applicant to disclose a mental health disability or physical disability?

A. No. I did not say "require."

…

Q. Did a candidate ever tell you that they felt pressured to disclose a mental health disability or physical disability?

A. No.

(Doc. 27-1, page 65 lines 3 - 23; page 66 line 10 - 14; and page 68 lines 12-15). Plaintiff has failed to show a reasonable belief that the DISC assessment is discriminatory as to disability outside vague conclusory allegations that it might cause someone with a mental or physical disability to disclose that information. 42 U.S.C. § 12203 governs prohibition against retaliation and coercion and states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter*". (emphasis added).[5] Even taking the

---

[5] The MHRA has an analogous statute that equally prohibits a finding that Plaintiff's conduct was a protected activity. *See* Mo. Rev. Stat. § 213.070.1(2).

evidence in the light most favorable to Plaintiff, she has not shown that the DISC assessment compels disclosure of an applicant's mental or physical disability, let alone is a proxy to weed out applicants based upon answers that may relate to said disabilities. In sum, Plaintiff's complaints about the DISC assessment do not rise to the level of a protected activity under the ADA or MHRA. For the reasons stated above, Defendant's Motion for Summary Judgment on Plaintiff's Count I - ADA Retaliation and Count IV - MHRA - Retaliation (Disability) is **GRANTED**.

## B. Casual Connection Between Protective Conduct and Plaintiff's Termination

"'Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine issue of fact on retaliation.'" *Lors v. Dean,* 746 F.3d 857, 865 (8th Cir. 2014) (quoting *Sisk v. Picture People, Inc.,* 669 F.3d 896, 900 (8th Cir.2012)). Although there is no definitive line drawn to show at what point a temporal connection establishes causation, we have held that "'two months is too long to support a finding of causation without something more,'" *Id.* at 866 (quoting *Sisk,* 669 F.3d at 901). *See also Smith v. Fairview Ridges Hosp.,* 625 F.3d 1076, 1088 (8th Cir. 2010) (finding one month is not close enough).

Defendant argues that there is no evidence of a causal connection between Plaintiff's alleged protected conduct and her termination. Defendant asserts that nearly four months passed between Plaintiff voicing disagreement and her termination. Specifically, Defendant states Plaintiff claims she voiced her disagreement with using the DISC assessment to Justin Rechter in November of 2023 and was terminated on February 16, 2024. Defendant argues four months is long past the time to establish a causal connection between the alleged protected activity and alleged adverse employment action. Further, Defendant argues that Mr. Rechter had no role in the

decision to terminate Plaintiff as he had not worked at EquipmentShare for almost two months before Mr. Williamson made the recommendation to terminate Plaintiff. Defendant asserts that although Mr. Williamson was aware that Plaintiff did not agree with Defendant's use of the DISC assessment, Mr. Williamson was not aware of any report of discrimination based on disability or age from Plaintiff.

Plaintiff argues that there is a causal connection between her engaging in protected activity and her termination of employment. Plaintiff states that approximately three weeks passed from her most recent complaint of discrimination between January 24, 2024, to January 25, 2024, and her termination on February 16, 2024. Plaintiff states that Mr. Williamson got angry and told Plaintiff that she should not die on this and to just do what you are told and stop fighting the DISC assessment in response to her raising the DISC assessment being discriminatory in their weekly staff meetings. Plaintiff further asserts that after Mr. Williamson became her supervisor in January 2024, she continued to raise the DISC assessment's discriminatory application toward job applicants who are older or suffer from a disability, which ultimately led to her termination. Plaintiff states that at her termination meeting, Defendant told her that she was being terminated for "insubordination," which coincides with Plaintiff's continual reports of the Defendant's use of the DISC assessment being discriminatory.

Viewing the evidence in the light most favorable to Plaintiff, there exists a genuine issue of material fact regarding the casual connection between the protected activity and Plaintiff's termination of employment. It is undisputed Plaintiff was hired as a senior recruited on July 19, 2023. (Doc. 27, SUMF ¶ 1). Plaintiff testified that she voiced her concern that the DISC assessment was "problematic" from the moment she began working at EquipmentShare until the moment she was fired. *Id*. at SUMF ¶ 25. Mr. Rechter was Plaintiff's supervisor until Mr. Williamson assumed

11

the position in January 2024. *Id*. at SUMF ¶¶ 5-6. In November of 2023, Plaintiff told Mr. Rechter about her belief that the DISC assessment was discriminatory and later made comments in staff meetings. *Id*. at SUMF ¶ 29.  Defendant placed Mr. Rechter on administrative leave on December 22, 2023, and terminated him on February 5, 2024. *Id*. at SUMF ¶ 30. Plaintiff stated, and the deposition transcript showed, that between January 24, 2024, to January 25, 2024, Plaintiff reported the Defendant's discriminatory hiring practices to Mr. Williamson and discussed that individuals are being scored lower due to both age and disability. (Doc. 33-1, SUMF ¶ 61).[6] The following deposition transcript excerpt shows the relevant passage:

> Q. And when you say you reported your concerns regarding the hiring practices, who did you report these concerns to?
>
> A. Many people. I reported it to -- well, which instance are you talking about?
>
> Q. I'm going by your complaint. You say on or about January 25, 2024 --
>
> A. Yes.
>
> Q. -- you are now reporting to your previous skip-level manager and you, again, reported your concerns regarding Defendant's discriminatory hiring practices. Who did you report this to?
>
> A. That instance is when I had the general manager meeting on a Wednesday, and I reported it to Colby, and I reported it in front of Cody and Hannah.

(Doc. 29-2, page 138 line 14 - page 139 line 5).

The above facts show that Mr. Williamson was Plaintiff's supervisor starting in January of 2024. Plaintiff reported her concerns regarding the DISC assessment to Mr. Williamson, as well as H.R. regarding these practices and had long been vocal about her concerns. Shortly after Mr. Williamson became Plaintiff's supervisor, he recommended that she be terminated on February 9,

---

[6] Defendant denies this as unsupported by the cited deposition testimony. (Doc. 36, page 12). However, as reproduced above, the Court finds this fact is supported by the deposition testimony and thus appropriate for evaluation for the purposes of the summary judgment motion.

2024, two weeks after the January 25, 2024, meeting. (Doc. 27, SUMF ¶ 33).[7] On February 15, 2024, the recommendation was approved and Plaintiff was terminated from her position on February 16, 2024. *Id*. at SUMF ¶¶ 37-38.[8] Viewing the facts in the light most favorable to the Plaintiff, the Court finds that based on close temporal proximity from the time Mr. Williamson became her supervisor, was informed of Plaintiff's concerns of the DISC assessment, to the time he recommended her termination is enough to create a genuine issue of material fact as to the casual connection between Plaintiff's protected activity and her termination.

## II.    Reason for Termination

"[a]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." *King v. Guardian ad Litem Bd.*, 39 F.4th 979, 986–87 (8th Cir. 2022) (quoting *Scarborough v. Federated Mut. Ins. Co.*, 996 F.3d 499, 506 (8th Cir. 2021)). To prove pretext, [the plaintiff] must "both discredit the asserted reason for the adverse action and show the circumstances permit drawing a reasonable inference that the real reason for the adverse action was retaliation." *Id.* (citation omitted).

Defendant argues that it has met its burden of showing a legitimate business reason for its decision to terminate Plaintiff. In support, Defendant states it terminated Plaintiff for poor performance as Mr. Williamson reported that Plaintiff refused to do her basic job functions; created a disruptive environment that hindered the talent acquisition team's ability to function; Plaintiff's

---

[7] Plaintiff disputes this claim on the grounds the contents of the email are a pretext for unlawfully retaliating against Plaintiff. However, Plaintiff does not challenge that Mr. Williamson sent the email to HR or the contents of the email. (Doc. 33-1, page 11).
[8] Plaintiff disputes SUMF ¶ 38 stating she was told that she was being terminated for "insubordination." However, Plaintiff does not dispute that she was terminated on February 16, 2024.

colleagues reported that she was rude and unprofessional; and that despite multiple verbal coaching sessions from her supervisor Plaintiff demonstrated an inability or unwillingness to improve her poor performance. Further, Defendant argues that Plaintiff's own testimony negates any inference of pretext as Plaintiff raised her concerns about the DISC assessment for months without repercussion and therefore Plaintiff cannot show her termination for poor performance was pretext for alleged retaliation for her voiced disagreement with the DISC assessment.

Plaintiff argues that Defendant's reason for termination was pretextual and has no basis in fact. In support Plaintiff asserts that she never told Mr. Williamson that she did not want to do the basic work of a senior recruiter; none of Plaintiff's colleagues ever expressed sentiments that she was rude or unprofessional; and never received verbal coaching from Mr. Williamson nor was there a "seek-to-understand" meeting that occurred on January 9, 2024 between Mr. Williamson, Plaintiff or Ms. Elrod. Further, Plaintiff states she never told Mr. Williamson or anyone at EquipmentShare that she wanted to work on special projects instead of sourcing and filling requisitions or that Mr. Williamson did not ask Plaintiff, on January 9, 2024 to send a weekly update regarding her efforts to fill general manager roles, as she already sent weekly reports to her stakeholders. Plaintiff asserts that when Defendant terminated her employment, she was told she was being terminated for "insubordination," which coincides with her repeated reports of DISC assessment being discriminatory toward disabled and older job applications. However, Plaintiff states that when she brought the lawsuit, Defendant shifted its reasoning for terminating her employment due to purported poor performance issues, unacceptable behavior, and unwillingness to do the basic functions of her role.

Viewing the evidence in the light most favorable to the Plaintiff, there exists a genuine issue of material fact regarding Defendant's reason for termination. Mr. Williamson was the

decision maker ultimately responsible for EquipmentShare's Decision to terminate Plaintiff. SUMF ¶ 31. Mr. Williamson was Plaintiff's supervisor starting in January of 2024. SUMF ¶ 6. Defendant states that Mr. Williamson was aware that Plaintiff did not agree with EquipmentShare's use of the DISC assessment but was not aware of any report of discrimination based on disability or age from Plaintiff. (Doc. 27-3, pages 2-3, ¶¶ 7 and 9). On February 9, 2024, Mr. Willaimson emailed Ms. Elrod, a senior human resources manager for EquipmentShare, to recommend terminating Plaintiff "based on a lack of willingness to do her basic job functions and creating a negative environment that is disrupting [EquipmentShare's] mission as a [Talent Acquisition] organization. *Id* at page 6. Mr. Williamson further stated in the email five instances ranging from December 7, 2023 to January 25, 2024 in which he stated that he had verbal coaching with Plaintiff; a "seek-to-understand" meeting with Plaintiff and Ms. Elrod; and requested weekly update regarding Plaintiff's efforts to fill general manager roles to which Plaintiff failed to share the requested information. *Id*. at pages 6-7.

Plaintiff challenges this characterization highlighting what she perceives are the inconsistencies with Defendant's SUMF. Plaintiff states that between December 2023 to January 2024 she had worked with Chad Guillaumin who informed Plaintiff he did not want to hire a candidate because the candidate was too old. (Doc. 29-2, page 81 lines 16-18). Plaintiff reported this incident to Mr. Williamson who instructed Plaintiff to lie to the candidate as to the reason why Defendant was not selecting him, which Plaintiff complied with out of fear of being fired. *Id* at page 126 line 22 - page 127 line 20. Plaintiff also states that between January 24, 2024, to January 25, 2024 Plaintiff reported the Defendant's discriminatory hiring practices to Mr. Williamson; that she never told Mr. Williamson that she did not want to do the basic work of a senior recruiter; never had a "seek-to-understand" meeting on January 9, 2024; Mr. Williamson did not ask Plaintiff

on January 9, 2024 to send a weekly update regarding her efforts to fill general manager roles, as she already sent weekly reports to her stakeholders; never received verbal coaching from Mr. Williamson; and was told she was being terminated for "insubordination" to which Defendant's reasons changed after the lawsuit to purported poor performance issues. (Doc. 29-2, page 137 lines 6 - page 139 line 5; page 151 lines 20 - 22; page 152 line 18 - page 153 line 5; page 153 lines 13-17; page 152 lines 7-9; and page 157 line 18 - page 158 line 3).

Here there exists a genuine issue of material fact as to whether the reason for termination was pretextual based upon the facts asserted by both the Plaintiff and Defendant. If finding Plaintiff's version of the facts as accurate, it would discredit the asserted reason for the adverse action and permit a reasonable inference that the real reason for Plaintiff's termination was retaliation. As such, summary judgment on this issue is not proper and best left for the trier of facts to ascertain at trial. For the reason stated, Defendant's Motion for Summary Judgment as to pretext is **DENIED**.

## CONCLUSION

For the reasons stated, the Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion for Summary Judgment as to Count II - ADEA Retaliation and Count III - MHRA - Retaliation (Age) is **DENIED**. Defendant's Motion for Summary Judgment as to Counts I - ADA Retaliation and Count IV - MHRA - Retaliation (Disability) is **GRANTED**. Summary judgment is hereby entered in favor of Defendant on Count I - ADA Retaliation and Count IV - MHRA - Retaliation (Disability).

**IT IS SO ORDERED.**

Date: July 29, 2026

_/s/ Douglas Harpool_
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

17